UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

DEC 1 6 2009

Clerk, U.S. District and
Bankruptcy Courts

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO.** CR-09-352 |
| | : | |
| | : | **VIOLATION: 50 U.S.C. § 1705** |
| | : | **(International Emergency Economic** |
| | : | **Powers Act)** |
| v. | : | |
| | : | **31 C.F.R. Part 560** |
| **CREDIT SUISSE AG** | : | **(Iranian Transactions Regulations)** |
| | : | |
| **Defendant.** | : | |

LAMBERTH, C.J. RCL

**INFORMATION**

The United States informs the Court that:

*Let this be filed.
Roger C. [signature]
U.S.D.J. 12/16/09*

## GENERAL ALLEGATIONS

At all times material to this Information:

1.      Defendant CREDIT SUISSE AG ("Credit Suisse") is a publicly traded financial institution registered and organized under the laws of Switzerland.

2.      Credit Suisse maintained U.S. dollar clearing relationships with financial institutions in the United States.  The U.S. financial institutions are located in New York, New York, and elsewhere in the United States.

International Emergency Economic Powers Act

3.      The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, authorizes the President of the United States to impose economic sanctions against a foreign country in response to an unusual or extraordinary threat to the national security, foreign

policy, or economy of the United States when the President declares a national emergency with respect to that threat.

## The Iranian Executive Orders

4.      On March 15, 1995, the President issued Executive Order No. 12957 finding that "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States" and declaring "a national emergency to deal with that threat." Executive Order No. 12957, as expanded and continued by Executive Orders No. 12959 and 13059 and Presidential Notice of March 10, 2004, was in effect at all times relevant to this Information.

5.      Executive Order Nos. 12957, 12959 and 13059 (collectively, the "Iranian Executive Orders") imposed economic sanctions, including a trade embargo, on Iran.  The Iranian Executive Orders prohibited, among other things, the exportation, re-exportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States or by a United States person.  The Iranian Executive Orders also prohibited any transaction by any United States person or within the United States that evaded or avoided, or had the purpose of evading or avoiding, any prohibition set forth in the Executive Orders.

## The Iranian Transactions Regulations

6.      The Iranian Executive Orders authorized the Secretary of the Treasury, in consultation with the Secretary of State, "to take such actions, including the promulgation of rules and regulations, as may be necessary to carry out the purposes" of the Iranian Executive Orders.  Pursuant to this authority, the Secretary of the Treasury promulgated the Iranian Transactions Regulations, 31 C.F.R. Part 560, implementing the sanctions imposed by the

Iranian Executive Orders.

7.      Under the Iranian Transactions Regulations, 31 C.F.R. Part 560:

      a.      Section 560.204 provides that no goods, technology, or services may be exported, re-exported, sold, or supplied to Iran, directly or indirectly, from the United States or by a United States person wherever located, without authorization.  31 C.F.R. § 560.204.

      b.      Section 560.203 prohibits any transaction by any United States person or within the United States that evaded or avoided, or had the purpose of evading or avoiding, or that attempted to violate, any of the prohibitions set forth in Part 560.  Section 560.203 further prohibits any attempt to violate the prohibitions contained in Part 560.  31 C.F.R. § 560.203.

8.      Financial transactions conducted by wire by Credit Suisse on behalf of Iranian banks through U.S. financial institutions were subject to the Iranian Transactions Regulations.

9.      The United States Department of Treasury's Office of Foreign Assets Control ("OFAC"), located in the District of Columbia, had responsibility for administering the Iranian Transactions Regulations and was the entity empowered to authorize transactions with Iran during the embargo.  Such authorization, if granted, would be in the form of a license.

**COUNT ONE**
**INTERNATIONAL EMERGENCY ECONOMIC POWERS ACT**
**(50 U.S.C. § 1705)**

10.     Paragraphs 1 through 9 are realleged as if fully set forth herein.

11.     From on or about March 15, 1995, and continuing until in or about 2006, the exact date being unknown to the United States, in the District of Columbia and elsewhere, the

defendant, **CREDIT SUISSE AG** knowingly and willfully violated and attempted to violate regulations issued under the International Emergency Economic Powers Act, Title 50, United States Code, Section 1705, to wit, Title 31, Code of Federal Regulations, Sections 560.203 and 560.204, which prohibit the exportation from the United States of a service to Iran without authorization, and prohibit any transaction within the United States that evaded and avoided, or had the purpose of evading and avoiding such regulations.

**(Violation of the United States Iranian Embargo,** in violation of Title 50, United States Code, Section 1705; Title 31, Code of Federal Regulations, Sections 560.203 and 560.204)

RICHARD WEBER
Chief, Asset Forfeiture and
Money Laundering Section

By: _____
FREDERICK REYNOLDS
TEXAS BAR 24003453
Trial Attorney

KEITH LIDDLE
MARYLAND BAR
Trial Attorney
Asset Forfeiture and Money Laundering Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C.  20005
(202) 514-1263

Date:   December 16, 2009