**FILED**

DEC 16 2009

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| CREDIT SUISSE AG, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

No. Cr. 09-352

DEFERRED PROSECUTION
AGREEMENT

Let this be filed.
Royce C. Lamberth
U.S.D.J. 12/16/09

Defendant Credit Suisse AG ("Credit Suisse"), a financial institution registered and organized under the laws of Switzerland, by and through its attorneys, King & Spalding LLP, and the United States Department of Justice, Criminal Division (the "United States"), hereby enter into this Deferred Prosecution Agreement (the "Agreement").

1.      **Charges**:  Credit Suisse agrees that it shall waive indictment and agrees to the filing of a one-count Criminal Information in the United States District Court for the District of Columbia, charging it with knowingly and willfully violating and attempting to violate regulations issued under the International Emergency Economic Powers Act, Title 50, United States Code, Section 1705, to wit, Title 31, Code of Federal Regulations, Sections 560.203 and 560.204, that prohibit: (a) the exportation of a service to Iran from the United States without authorization; and (b) any transaction within the United States that evaded and avoided, or had the purpose of evading and avoiding such regulations.

2.      **Acceptance of Responsibility**:  Credit Suisse accepts and acknowledges responsibility for its conduct and that of its employees as set forth in the Factual Statement attached hereto as Exhibit A and incorporated herein by reference (the "Factual Statement").  If the United States, pursuant to Paragraph 10 of this Agreement, initiates a prosecution that is deferred by this Agreement against Credit Suisse, Credit Suisse agrees that it will neither contest the admissibility of the Factual Statement or any other documents provided by Credit Suisse to the United States or the Swiss government nor contradict in any such proceeding the facts contained within the Factual Statement.

3.      **Forfeiture Amount**:  As a result of Credit Suisse's conduct, including the conduct set forth in the Factual Statement, the parties agree that the United States could institute a civil and/or criminal forfeiture action against certain funds held by Credit Suisse and that such funds would be forfeitable pursuant to Title 18, United States Code, Sections 981 and 982.  Credit Suisse hereby acknowledges that at least $536,000,000 was involved in transactions described in the Factual Statement, and that such conduct violated Title 50, United States Code, Section 1705.  In lieu of a criminal prosecution and related forfeiture, Credit Suisse hereby agrees to pay to the United States the sum of $268,000,000 (the "Forfeiture Amount").[1]  Credit Suisse hereby agrees that the funds paid by Credit Suisse pursuant to this Agreement shall be considered substitute *res* for the purpose of forfeiture to the United States pursuant to Title 18, United States Code, Section 981, and Credit Suisse releases any and all claims it may have to such funds. Credit Suisse shall pay the Forfeiture Amount within five business days from the entry of

---

[1]   Credit Suisse has also agreed to pay a separate and additional $268,000,000 pursuant to a Deferred Prosecution Agreement with the District Attorney of the County of New York ("DANY") being entered into contemporaneously, resulting in an overall total forfeiture amount of $536,000,000.

this Agreement pursuant to payment instructions as directed by the United States in its sole discretion.

4.    **Court is Not Bound**:  Credit Suisse and the United States understand that the Agreement must be approved by the United States District Court for the District of Columbia, in accordance with 18 U.S.C. § 3161(h)(2).  If that Court declines to approve this Agreement for any reason, the United States and Credit Suisse are released from any obligation imposed upon them by this Agreement, this Agreement shall be null and void, and the United States shall not premise any prosecution of Credit Suisse, its employees, officers, or directors upon any admissions or acknowledgements contained herein.

5.    **Deferral of Prosecution**:  In consideration of Credit Suisse's remedial actions to date and its willingness to: (a) acknowledge responsibility for its actions; (b) have voluntarily terminated the conduct set forth in the Factual Statement prior to the commencement of the United States's investigation; (c) continue its cooperation with the United States as stated in Paragraphs 6 and 7; (d) demonstrate its future good conduct and full compliance with Financial Action Task Force international Anti-Money Laundering and Combating Financing of Terrorism best practices and the Wolfsberg Anti-Money Laundering Principles for Correspondent Banking; and (e) settle any and all civil and criminal claims currently held by the United States for any act within the scope of the Factual Statement, the United States agrees as follows:

i.    the United States shall recommend to the Court, pursuant to 18 U.S.C. § 3161(h)(2), that prosecution of Credit Suisse on the Information filed pursuant to Paragraph 1 be deferred for a period of twenty-four months from the date of the filing of the Information referred to in Paragraph 1.  Credit Suisse shall consent to a motion, the

contents to be agreed upon by the parties, to be filed by the United States with the Court promptly upon execution of this Agreement, pursuant to 18 U.S.C. § 3161(h)(2), in which the United States will present this Agreement to the Court and move for a continuance of all further criminal proceedings, including trial, for a period of twenty-four months, for speedy trial exclusion of all time covered by such a continuance, and for approval by the Court of this deferred prosecution.  Credit Suisse further agrees to waive and does hereby expressly waive any and all rights to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, Title 18, United States Code, Section 3161, Federal Rule of Criminal Procedure 48(b), and any applicable Local Rules of the United States District Court for the District of Columbia for the period that this Agreement is in effect; and

ii.     the United States shall, if Credit Suisse is in full compliance with all of its obligations under this Agreement, within thirty days of the expiration of the time period set forth above in Paragraph 5(i), or less at the discretion of the United States, seek dismissal with prejudice of the Information filed against Credit Suisse pursuant to Paragraph 1 and this Agreement shall expire and be of no further force or effect.

6.     **Cooperation**:  Credit Suisse agrees that it shall:

(a)     By June 30, 2010, conduct or repeat U.N., U.S., and E.U. sanctions training, to include training of all employees (1) involved in the processing or investigation of United States Dollar ("USD") payments and all employees and officers who directly or indirectly are supervising these employees; (2) involved in execution of USD denominated securities trading orders and all employees and officers who directly or indirectly are supervising these employees; and (3) all U.S. employees.  After such

training is complete, Credit Suisse's Chief Executive Officer must certify that such training has been completed;

(b)      By June 30, 2010, certify that Credit Suisse has a written policy to require the use of the MT 202COV bank-to-bank payment message where appropriate and is continuing to employ a bank-wide systems architecture that requires the use of the MT 202COV for all cover payments;

(c)      Maintain the electronic database of Society for Worldwide Interbank Financial Telecommunications ("SWIFT") Message Transfer ("MT") payment messages and other internal Credit Suisse documents relating to USD payments processed during the period from 2002 through April 30, 2007 in electronic format for a period of five years from the date of this Agreement; and

(d)      Abide by any and all orders and regulations of the Board of Governors of the Federal Reserve System regarding remedial measures or other required actions related to this matter.

7.      Credit Suisse agrees that for the term of this Agreement, in accordance with applicable laws, it shall supply and/or make available upon request by the United States any additional relevant documents, electronic data, or other objects in Credit Suisse's possession, custody, or control as of the date of this Agreement relating to any transaction within the scope of or relating to the Factual Statement.  Nothing in this Agreement shall be construed to require Credit Suisse to produce any documents, records or tangible evidence that are protected by the attorney-client privilege or work product doctrine or Swiss or other applicable confidentiality, criminal, or data protection laws. To the extent that a United States request requires transmittal through formal government

channels, Credit Suisse agrees to use its best efforts to facilitate such a transfer and agrees not to oppose any request made in accordance with applicable law either publicly or privately.

8. **Government Commitments**: In return for the full and truthful cooperation of Credit Suisse and compliance with the terms and conditions of this Agreement, the United States agrees that it shall not seek to prosecute Credit Suisse, its corporate parents, subsidiaries, affiliates, successors, predecessors, and assigns for any act within the scope of the Factual Statement from 1995 through the date of this Agreement unless: (a) other than the transactions that have already been disclosed and documented to the United States, Credit Suisse knowingly and willfully transmitted or approved the transmission of USD-denominated funds that went to or came from persons or entities designated at the time of the transaction by the Office of Foreign Assets Control as a Specially Designated Terrorist, a Specially Designated Global Terrorist, a Foreign Terrorist Organization, or a proliferator of Weapons of Mass Destruction (an "Undisclosed Special SDN Transaction"); or (b) in the sole discretion of the United States, there is a willful and material breach of this Agreement. In the event of a breach resulting in a prosecution of Credit Suisse or a prosecution related to an Undisclosed Special SDN transaction, the United States may use any information provided by or on behalf of Credit Suisse to the United States or any investigative agency, whether prior to or subsequent to this Agreement, and/or any leads derived from such information, including the attached Factual Statement.

9. **Waiver of Rights**: Credit Suisse hereby further expressly agrees that within six months of a wilful and material breach of this Agreement by Credit Suisse, any

violations of federal law that were not time-barred by the applicable statute of limitations as of the date of this Agreement, including any claims covered by the tolling agreement signed by the parties, and that: (a) relate to the Factual Statement; or (b) were hereinafter discovered by the United States, may in the sole discretion of the United States be charged against Credit Suisse, notwithstanding the provisions or expiration of any applicable statute of limitations.  Credit Suisse also expressly waives any challenges to the venue or jurisdiction of the United States District Court for the District of Columbia.

    10.    **Breach of the Agreement**:  If the United States determines that Credit Suisse has committed a willful and material breach of any provision of this Agreement, the United States shall provide written notice to Credit Suisse's counsel of the alleged breach and provide Credit Suisse with a two-week period from the date of receipt of said notice, or longer at the discretion of the United States, in which to make a presentation to the United States to demonstrate that no breach has occurred or, to the extent applicable, that the breach is not willful or material, or has been cured.  The parties hereto expressly understand and agree that if Credit Suisse fails to make the above-noted presentation within such time period, it shall be presumed that Credit Suisse is in willful and material breach of this Agreement.  The parties further understand and agree that the United States's exercise of discretion under this paragraph is not subject to review in any court or tribunal outside the Criminal Division of the Department of Justice.  In the event of a breach of this Agreement that results in a prosecution, such prosecution may be premised upon any information provided by or on behalf of Credit Suisse to the United States or any investigative agencies, whether prior to or subsequent to this Agreement, and/or any leads derived from such information, including the attached Factual Statement, unless

otherwise agreed to by the United States and Credit Suisse in writing at the time the information was provided to the United States.

11.     **Requirement to Obey the Law:**  If the United States determines during the term of this Agreement that Credit Suisse has committed any federal crime after the date of the signing of this Agreement, Credit Suisse shall, in the sole discretion of the United States, thereafter be subject to prosecution for any federal crimes of which the United States has knowledge, including but not limited to the conduct described in the Factual Statement.  The discovery by the United States of any purely historical criminal conduct that did not take place during the term of the Agreement will not constitute a breach of this provision.

12.     **Parties Bound by the Agreement:**  This Agreement and all provisions set forth herein bind Credit Suisse and any of its corporate parents, subsidiaries, affiliates, successors, predecessors, and assigns.  It is further understood that this Agreement and all provisions set forth herein are binding on the United States, but specifically do not bind any federal agencies, or any state or local authorities, although the United States will bring the cooperation of Credit Suisse and its compliance with its other obligations under this Agreement to the attention of federal, state, or local prosecuting offices or regulatory agencies, if requested by Credit Suisse or its attorneys.

13.     **Public Statements:**  Credit Suisse expressly agrees that it shall not, through its attorneys, board of directors, agents, officers, employees, consultants, contractors, subcontractors, or representatives, including any person or entity controlled by any of them, make any public statement contradicting, excusing, or justifying any statement of fact contained in the Factual Statement.  Any such public statement by

Credit Suisse, its attorneys, board of directors, agents, officers, employees, consultants, contractors, subcontractors, or representatives, including any person or entity controlled by any of them, shall constitute a willful and material breach of this Agreement as governed by Paragraph 10 of this Agreement, and Credit Suisse would thereafter be subject to prosecution pursuant to the terms of this Agreement.  The decision of whether any public statement by any such person contradicting, excusing, or justifying a fact contained in the Factual Statement will be imputed to Credit Suisse for the purpose of determining whether Credit Suisse has breached this Agreement shall be in the sole and reasonable discretion of the United States.  Upon the United States's notification to Credit Suisse of a public statement by any such person that in whole or in part contradicts, excuses, or justifies a statement of fact contained in the Factual Statement, Credit Suisse may avoid breach of this Agreement by publicly repudiating such statement within seventy-two hours after notification by the United States.  This paragraph is not intended to apply to any statement made by any individual in the course of any criminal, regulatory, or civil case initiated by a governmental or private party against such individual regarding that individual's personal conduct.

14.     **Sales or Mergers**:  Credit Suisse agrees that if it sells, merges, or transfers all or substantially all of its business operations or assets as they exist as of the date of this Agreement to a single purchaser or group of affiliated purchasers during the term of this Agreement, it shall include in any contract for sale, merger, or transfer a provision binding the purchaser/successor/transferee to the obligations described in this Agreement. Any such provision in a contract of sale, merger, or transfer shall not expand or impose

additional obligations on Credit Suisse as they relate to Paragraphs 6 and 7 of this Agreement.

15.    **Conduct Covered by Agreement**:  It is further understood that this Agreement does not relate to or cover any conduct by Credit Suisse other than for any act within the scope of the Factual Statement and this Agreement.

16.    **Public Filing**:  Credit Suisse and the United States agree that, upon acceptance by the United States District Court for the District of Columbia, this Agreement (and its attachments) and an Order deferring prosecution shall be publicly filed in the United States District Court for the District of Columbia.

17.    **Complete Agreement**:  This Agreement sets forth all the terms of the Agreement between Credit Suisse and the United States.  There are no promises, agreements, or conditions that have been entered into other than those expressly set forth in this Agreement, and none shall be entered into and/or be binding upon Credit Suisse or the United States unless signed by the United States, Credit Suisse's attorneys, and a duly authorized representative of Credit Suisse.  This Agreement supersedes any prior promises, agreements, or conditions between Credit Suisse and the United States. Credit Suisse agrees that it has the full legal right, power, and authority to enter into and perform all of its obligations under this Agreement and it agrees to abide by all terms and obligations of this Agreement as described herein.

**Acknowledgment**

We, Romeo Cerutti and Tobias Guldimann, the duly authorized representatives of Credit Suisse AG, hereby expressly acknowledge the following: (1) that we have read this entire Agreement; (2) that we have had an opportunity to discuss this Agreement fully and freely with Credit Suisse AG's attorneys; (3) that Credit Suisse AG fully and completely understands each and every one of its terms; (4) that Credit Suisse AG is fully satisfied with the advice and representation provided to it by its attorneys; and (5) that Credit Suisse AG has signed this Agreement voluntarily.

Credit Suisse AG

_____                    _____
DATE                                                Romeo Cerutti
                                                    General Counsel

_____                    _____
DATE                                                Tobias Guldimann
                                                    Chief Risk Officer

***Counsel for Credit Suisse AG***

    We, Christopher A. Wray and Andrew C. Hruska, the attorneys for Credit Suisse AG, hereby expressly acknowledge the following: (1) that we have discussed this Agreement with our client; (2) that we have fully explained each one of its terms to our client; (3) that we have fully answered each and every question put to us by our client regarding the Agreement; and (4) that we believe our client completely understands all of the Agreement's terms.

_December 16, 2009_
DATE

_December 16, 2009_
DATE

Christopher A. Wray
King & Spalding LLP

Andrew C. Hruska
King & Spalding LLP

12

**_On Behalf of the Government_**

RICHARD WEBER, Chief
Asset Forfeiture and Money Laundering Section

12 - 16 - 09

DATE

FREDERICK W. REYNOLDS
Trial Attorney

KEITH LIDDLE
Trial Attorney

Asset Forfeiture and Money Laundering Section
U.S. Department of Justice, Criminal Division